GUOFENG LI, ESQ. (CA343936)
VIP LAW GROUP PC
Email: LAWYERLI.CHRIS@GMAIL.COM
855 CONKLIN STREET STE S
FARMINGDALE, NY 11735
Telephone No.: (516) 808-6266
Attorney for Plaintiff ROBERTO QUIROZ MORALES

# UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

**ROBERTO QUIROZ MORALES**,

*Petitioner-Plaintiff,*

*v.*

**MARKWAYNE MULLIN** , Secretary of the U.S. Department of Homeland Security, in their official capacity;

**TODD BLANCHE** , Attorney General of the United States, in their official capacity;

**DAVID VENTURELLA** , Acting Director of U.S. Immigration and Customs Enforcement, in their official capacity;

**THOMAS GILES** , Los Angeles ICE Field Office Director, in their official capacity;

**JAMES JANECKA** , Warden and Facility Administrator of Adelanto ICE Processing Center, in their official capacity.

*Respondents-Defendants.*

Case No. ________________________

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; 8 U.S.C. §§ 1225, 1226, 1231; APA 5 U.S.C. § 706; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Petitioner ROBERTO QUIROZ MORALES is a native and citizen of Mexico who has lived in the United States since approximately 1990, and continuously since 1998. He is the father of six United States citizen children. On his own initiative, he retained immigration counsel in an effort to regularize his status, and on July 13, 2026, the day of his scheduled U.S. Citizenship and Immigration Services biometrics appointment in that process, he was arrested by officers of U.S. Immigration and Customs Enforcement ("ICE"). He has been held at the Adelanto ICE Processing Center since July 13, 2026. He has never received a bond hearing or any individualized determination of whether his detention serves any legitimate purpose.

2. Respondents have treated Petitioner as a noncitizen subject to a final order of removal, relying on a December 17, 1997 in absentia order entered in proceedings of which he had no notice. Exhibit A. That order no longer stands. After the Immigration Judge stayed Petitioner's removal, and after ICE confirmed in writing that it had received the stay order and that Petitioner "is not being transferred or removed," Exhibit A, the Immigration Judge on September 15, 2026 granted Petitioner's unopposed Motion to Reopen, noting that the Notice to Appear sent to Petitioner by certified mail had been returned to the court unclaimed. Exhibit B. Binding Ninth Circuit precedent confirms that an in absentia order entered without notice may be reopened "at any time," even after it has been reinstated. *Miller v. Sessions*, 889 F.3d 998, 1002–03 (9th Cir. 2018).

3. Because his proceedings have been reopened, Petitioner is no longer subject to an administratively final order of removal. The question whether he "is to be removed" is once again pending before the Immigration Court, and his detention is governed, if at all, by 8 U.S.C. § 1226(a), the discretionary detention statute under which a noncitizen *may* be detained or *may* be released on bond or conditional parole, and under which he is entitled to request a custody redetermination before an Immigration Judge. 8 C.F.R. §§ 236.1(d), 1003.19, 1236.1(d). The post-order detention statute, 8 U.S.C. § 1231, cannot authorize his confinement because there is no final order to execute, and the mandatory detention provision for applicants "seeking admission," 8

U.S.C. § 1225(b)(2)(A), does not reach a long-term resident arrested in the interior nearly three decades after his last entry.

4. Nevertheless, Respondents continue to detain Petitioner without any custody review and without identifying any lawful authority for his detention in light of the Immigration Judge's orders. That detention violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. Petitioner asks this Court to issue the writ and order his release under reasonable conditions or, in the alternative, to order Respondents to provide a constitutionally adequate, individualized bond hearing within seven days.

## JURISDICTION

5. This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and the federal habeas statute, 28 U.S.C. § 2241. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), and Article I, § 9, cl. 2 of the Constitution (Suspension Clause). The Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202.

6. Petitioner is "in custody" within the meaning of 28 U.S.C. § 2241(c)(3) because he is physically detained by Respondents at the Adelanto ICE Processing Center. Federal district courts retain jurisdiction over habeas petitions challenging the statutory and constitutional basis for immigration detention. *Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Petitioner does not challenge the merits of any removal order, nor the commencement or adjudication of his removal proceedings, which have been reopened and remain pending before the Immigration Court. See 8 U.S.C. § 1252(b)(9), (g); *Jennings*, 583 U.S. at 294–95. He challenges only the lawfulness of his present physical detention.

7. Section 1226(e) of Title 8 does not bar this action. It precludes review only of discretionary custody judgments; it does not bar challenges to "the extent of the Government's

detention authority under the 'statutory framework' as a whole," nor constitutional challenges to the procedures by which detention is imposed. *Jennings*, 583 U.S. at 295–96; *Demore*, 538 U.S. at 516–17. Nor does § 1252(g) apply; it reaches only three discrete actions—the decision to commence proceedings, adjudicate cases, or execute removal orders—and does not bar challenges to the legality of detention. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999); *Jennings*, 583 U.S. at 294.

**VENUE**

8. Venue is proper in the Central District of California because Petitioner is confined at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301, within San Bernardino County, and his immediate custodian is located in this District. *Rumsfeld v. Padilla*, 542 U.S. 426, 443–47 (2004). Venue is also proper under 28 U.S.C. § 1391(e)(1) because Respondents are officers of the United States sued in their official capacities and a substantial part of the events giving rise to this action, including Petitioner's continued detention, occurred in this District. Assignment to the Eastern Division is appropriate under General Order 24-09 because Petitioner resides and is detained in San Bernardino County.

**PARTIES**

9. Petitioner ROBERTO QUIROZ MORALES is a native and citizen of Mexico (A-Number 075-487-380). He is detained at the Adelanto ICE Processing Center under the authority of Respondents.

10. Respondent MARKWAYNE MULLIN is the Secretary of the U.S. Department of Homeland Security ("DHS") and is sued in his official capacity. He is charged with administration and enforcement of the immigration laws, 8 U.S.C. § 1103(a), oversees ICE, and is a legal custodian of Petitioner. His address is U.S. Department of Homeland Security, Washington, D.C. 20528.

11. Respondent TODD BLANCHE is the Attorney General of the United States and is sued in his official capacity. He oversees the Executive Office for Immigration Review, which

conducts removal and custody-redetermination proceedings, 8 U.S.C. § 1103(g), and is a legal custodian of Petitioner. His address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

12. Respondent DAVID VENTURELLA is the Acting Director of ICE and is sued in his official capacity. He is responsible for the detention and custody of noncitizens in removal proceedings and is a legal custodian of Petitioner. His address is 500 12th Street, S.W., Washington, D.C. 20536.

13. Respondent THOMAS GILES is the Field Office Director of the ICE Enforcement and Removal Operations Los Angeles Field Office, which has jurisdiction over the Adelanto ICE Processing Center, and is sued in his official capacity. He has direct authority over Petitioner's detention and release and is a legal custodian of Petitioner. His address is 300 North Los Angeles Street, Room 7631, Los Angeles, California 90012.

14. Respondent JAMES JANECKA is the Warden and Facility Administrator of the Adelanto ICE Processing Center, the facility in which Petitioner is physically confined, and is sued in his official capacity. He is Petitioner's immediate custodian. His address is 10250 Rancho Road, Adelanto, California 92301.

15. Each Respondent is sued in an official capacity only. Pursuant to Fed. R. Civ. P. 25(d), any successor to a named Respondent is automatically substituted as a party.

## STATEMENT OF FACTS

### A. Petitioner's Long Residence and Family in the United States

16. Petitioner first entered the United States in or about August 1990. Shortly after his entry, immigration officers required him to complete paperwork. Petitioner did not understand that he was being placed into formal immigration proceedings or the legal consequences of the documents he was asked to sign.

17. On December 17, 1997, an Immigration Judge ordered Petitioner removed in absentia. Petitioner never received notice of the hearing. As the Immigration Judge has since noted,

the Notice to Appear sent to Petitioner by certified mail was returned to the court as unclaimed and remained in the record of proceedings. Exhibit B. Petitioner did not knowingly fail to appear; he did not know that he was required to appear before an Immigration Judge.

18. In July 1998, Petitioner was arrested in San Bernardino County and was subsequently convicted in the Chino Justice Court of unlawful sexual intercourse with a minor more than three years younger than the defendant, in violation of California Penal Code § 261.5(c). He was sentenced to 36 months of probation and 180 days in jail. Section 261.5(c) is a strict-liability offense defined by the age difference between the parties; it requires neither force nor lack of consent, and the Supreme Court has held that it is not "sexual abuse of a minor" under the INA. *Esquivel-Quintana v. Sessions*, 581 U.S. 385 (2017).

19. After Petitioner served his jail term, immigration officers took him into custody in early November 1998. Petitioner was told that he could either remain in custody or return to Mexico; he chose to return and was placed on a bus to Mexico on or about November 13, 1998, which government records reflect as a removal. Petitioner understood his return to be a consequence of his undocumented status; he did not understand that an order of removal had been entered against him in proceedings of which he had never received notice.

20. In June 2002, Petitioner was arrested in San Bernardino County for a violation of the probation imposed in the 1998 case. The FBI record of that arrest reflects no new conviction, and it reflects no arrest or conviction of any kind in the more than twenty-four years since.

21. Petitioner returned to the United States later in 1998 and has lived here continuously ever since—approximately twenty-eight years.

22. Petitioner is the father of six United States citizen children and has extensive family, employment, property, and community ties in this country. Exhibit A. His family depends on his presence and support, and his detention has been especially hard on his young daughter, who is facing significant emotional challenges. *Id.*

### B. Petitioner's Efforts to Regularize His Status and His Arrest

23. In 2025, Petitioner and his wife sought professional assistance to address their immigration status. Petitioner retained an attorney and paid legal fees for that assistance. As part of that process, Petitioner requested and obtained his own FBI Identity History Summary in August 2025. His wife completed biometrics, and Petitioner followed the instructions he was given and was scheduled for his own USCIS biometrics appointment.

24. On July 13, 2026, the day of his scheduled USCIS biometrics appointment, Petitioner was arrested by ICE. He was not arrested at or near a border or port of entry in connection with any attempt to enter the United States. He was arrested in the interior of the United States, nearly three decades after his last entry, while he was actively and voluntarily pursuing lawful immigration status.

25. After his arrest, Petitioner was informed that ICE was relying on the 1997 in absentia order. ICE transferred him to the Adelanto ICE Processing Center, where he has remained continuously detained. Exhibit A.

26. Petitioner promptly retained new immigration counsel, Alexandre Law Firm & Associates, which filed with the Immigration Court a Motion to Reopen the 1997 in absentia proceedings based on lack of notice and, in the alternative, requesting that the court exercise its sua sponte authority, together with a request for a stay of removal. Exhibits A, B. The motion was supported by Petitioner's declaration, a declaration from his son, applications for relief, and supporting documentation totaling nearly 400 pages. Exhibit A. The applications include an application for asylum, withholding of removal, and protection under the Convention Against Torture, and an application for cancellation of removal for certain nonpermanent residents under 8 U.S.C. § 1229b(b).

### C. The Immigration Judge Stays Removal and Reopens Proceedings

27. On August 26, 2026, counsel informed ICE that the Immigration Judge had that day denied Petitioner's credible fear/asylum review and returned the matter to DHS, and asked

ICE to defer removal while the Motion to Reopen and stay request remained pending. Exhibit A. That evening, an ICE Supervisory Detention and Deportation Officer responded that ICE was obligated to carry out the "removal of criminally convicted detainees with final orders" and would conduct "pre-removal checks." *Id.*

28. On or about September 3, 2026, the Immigration Judge granted Petitioner's request for a stay of removal. Exhibit A. That same evening, Petitioner's family advised counsel that Petitioner was about to be moved or removed, and counsel immediately transmitted the stay order to ICE and asked ICE to confirm whether Petitioner had been moved. *Id.*

29. On September 4, 2026, ICE Enforcement and Removal Operations at Adelanto confirmed in writing that it had received the Immigration Judge's order granting the stay of removal, that Petitioner "is not being transferred or removed" from the facility, and that the matter was being handled according to the Immigration Judge's orders. Exhibit A.

30. On September 15, 2026, Immigration Judge Yvan Murad of the West Los Angeles Immigration Court granted Petitioner's Motion to Reopen. Exhibit B. The Immigration Judge found that DHS had filed no timely response and that the motion was therefore deemed unopposed, 8 C.F.R. § 1003.23(a); accepted as true the facts stated in Petitioner's affidavits; noted that the Notice to Appear had been returned to the court unclaimed; and, "[b]ased on the record before the court and lack of any opposition," exercised the court's sua sponte authority to grant the motion. *Id.* The order was served on DHS and on Petitioner's counsel on September 16, 2026. *Id.*

31. As of the date of this Petition, DHS has not appealed the Immigration Judge's September 15, 2026 order to the Board of Immigration Appeals or moved for its reconsideration.

**D. Petitioner's Continued Detention**

32. Petitioner's removal proceedings are now pending before the Immigration Court. Nevertheless, Petitioner remains detained at the Adelanto ICE Processing Center. ICE officers at Adelanto have continued to correspond with counsel about Petitioner as a current detainee through at least September 18, 2026. Exhibit A.

33. On information and belief, since the Immigration Judge reopened his proceedings ICE has not served Petitioner with a Form I-286 Notice of Custody Determination offering release on bond or recognizance, has not conducted any custody review, and has not identified the statutory authority under which it now detains him.

34. At no time since his arrest has any neutral adjudicator considered whether Petitioner presents a danger to the community or a risk of flight, whether any such risk could be mitigated by conditions of release, or whether his continued detention serves any legitimate governmental purpose.

35. Petitioner's detention has caused serious harm to him and his family. Petitioner is diabetic and requires medically necessary diabetic footwear. Counsel was informed that after Petitioner was taken out of the detention facility and returned, he was issued new clothing but his diabetic shoes were not returned to him, and counsel was required to intervene with ICE on his behalf. Exhibit A. His detention also separates him from his six children, including a daughter who is facing significant emotional challenges. *Id.*

36. If released, Petitioner will return to his family home in Fontana, California, in San Bernardino County, where he will be available to appear for every hearing before the Immigration Court and every ICE check-in. He is prepared to comply with any condition of release the Court or ICE imposes, including electronic monitoring.

## LEGAL FRAMEWORK

### A. The INA's Detention Regimes

37. The INA establishes distinct detention regimes that turn on a noncitizen's location and procedural posture. Section 1225(b) governs "applicants for admission"—noncitizens who "arrive[] in the United States" or who are "present in the United States who ha[ve] not been admitted." 8 U.S.C. § 1225(a)(1). Within that group, § 1225(b)(2)(A) requires detention of an applicant "seeking admission" whom an examining officer determines "is not clearly and beyond a doubt entitled to be admitted." Section 1226, by contrast, governs noncitizens already in the

country pending the outcome of removal proceedings. Under § 1226(a), the Secretary "may" arrest and detain a noncitizen "pending a decision on whether the alien is to be removed," and "may" release him on bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2); *Jennings*, 583 U.S. at 287–90, 303. Section 1231, finally, governs detention only after a removal order has become final, during and after the "removal period." 8 U.S.C. § 1231(a)(1)–(2), (6).

38. The statutory source of detention authority thus shifts with the procedural posture of the case. Section 1226(a) governs until an order of removal becomes final; § 1231 applies only thereafter. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057–62 (9th Cir. 2008); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 947–48 (9th Cir. 2008). A noncitizen detained under § 1226(a) may seek a custody redetermination from an Immigration Judge at any time before a final order of removal. 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1). At such a hearing the Immigration Judge considers whether the noncitizen is a danger to persons or property or a flight risk. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

**B. Because Petitioner's Proceedings Have Been Reopened, No Final Order Exists and § 1231 Cannot Authorize His Detention**

39. The removal period under § 1231 begins on the latest of the date the order of removal becomes administratively final, the date of a reviewing court's final order if removal has been judicially stayed, or the date of release from non-immigration detention. 8 U.S.C. § 1231(a)(1)(B); see 8 U.S.C. § 1101(a)(47)(B). When an Immigration Judge grants a motion to reopen, the prior decision no longer resolves the case, and the proceedings return to the posture of pending removal proceedings in which the question whether the noncitizen "is to be removed" remains undecided. 8 U.S.C. § 1226(a). There is therefore no administratively final order from which a removal period could run, and no order for § 1231 to execute.

40. Respondents may contend that the 1997 order was reinstated under 8 U.S.C. § 1231(a)(5) after Petitioner's 1998 return to Mexico. Reinstatement does not change the analysis. A reinstatement determination creates no new order of removal; it reinstates the prior order "from

its original date." 8 U.S.C. § 1231(a)(5); see *Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) (en banc). And the Ninth Circuit has squarely held that § 1231(a)(5) does not deprive an Immigration Judge of jurisdiction to reopen an in absentia order where the motion rests on lack of notice: a noncitizen with a reinstated order "retains the right, conferred by § 1229a(b)(5)(C)(ii), to seek rescission of a removal order entered in absentia, based on lack of notice, by filing a motion to reopen 'at any time.'" *Miller v. Sessions*, 889 F.3d 998, 1002–03 (9th Cir. 2018).

41. That is precisely the motion Petitioner filed. His Motion to Reopen asserted lack of notice; the Immigration Judge accepted as true the facts in Petitioner's affidavits and found that the Notice to Appear had been returned to the court unclaimed. Exhibit B. Although the Immigration Judge also invoked the court's sua sponte authority, the order rests on a lack-of-notice record of exactly the kind *Miller* protects, and it is therefore distinguishable from *Bravo-Bravo v. Garland*, 54 F.4th 634 (9th Cir. 2022), which addressed reopening of a reinstated order on grounds other than lack of notice. Once the underlying in absentia order is reopened, there is no final order left to reinstate or execute. *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), which held that § 1231 governs the detention of noncitizens with reinstated orders who pursue withholding-only relief, rested on the premise that the underlying order remained administratively final; that premise is absent here.

42. In any event, the question before this Court is not whether the Immigration Judge's reopening order was correct; review of that order lies with the Board of Immigration Appeals and, ultimately, the court of appeals. 8 U.S.C. § 1252(a)(5), (b)(9). The question is what authority, if any, supports Petitioner's detention now. DHS did not oppose the Motion to Reopen, has not sought review of the order, and has itself acknowledged that it is acting according to the Immigration Judge's orders. Exhibits A, B. Respondents may not collaterally disregard an operative order of the Immigration Court in order to detain Petitioner as though it had never issued.

**C. Section 1225(b)(2)(A) Does Not Reach a Long-Term Resident Arrested in the Interior**

43. For nearly three decades before July 2025, DHS and the Executive Office for Immigration Review treated noncitizens who entered without inspection and were later arrested in the interior as detained under § 1226(a) and eligible for a bond hearing. In July 2025, ICE adopted interim guidance, later endorsed by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), asserting that such noncitizens are "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A) regardless of how long they have lived here.

44. That reading fails, and in this Circuit it is foreclosed. Section 1225(b)(2)(A) applies only to an applicant who is "seeking admission," and only upon an examining officer's determination that the applicant is "not clearly and beyond a doubt entitled to be admitted"—language that describes inspection at the threshold of entry, not an arrest in the interior decades later. The Supreme Court has described § 1225(b) as governing noncitizens seeking admission at the Nation's borders and ports of entry, and § 1226 as governing noncitizens already in the country. *Jennings*, 583 U.S. at 287–89. The Ninth Circuit has now resolved the question in this Circuit: § 1225(b)(2)(A) applies to noncitizens seeking admission at the border, not to noncitizens who entered without inspection and are later apprehended in the interior, who remain detained under § 1226(a) and eligible for bond. *Rodriguez Vazquez v. Bostock*, No. 25-6842, — F.4th —, 2026 WL 2196424 (9th Cir. July 30, 2026). The Second, Sixth, Tenth, and Eleventh Circuits agree. *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *Hernandez Alvarez v. Warden*, 175 F.4th 1258 (11th Cir. 2026). The contrary decisions of the Fifth and Eighth Circuits, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), do not bind this Court.

45. Whatever deference the BIA's interpretation of § 1225(b)(2)(A) might once have commanded, none is due now. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–13 (2024). This Court must "exercise [its] independent judgment in deciding whether an agency has

acted within its statutory authority." *Id.* at 412. Under *Rodriguez Vazquez*, Petitioner's detention is authorized, if at all, only by § 1226(a), with the custody-review process that section and its regulations provide.

**D. Petitioner Is Not Subject to Mandatory Detention Under § 1226(c)**

46. Petitioner's 1998 conviction does not trigger mandatory detention under 8 U.S.C. § 1226(c). A conviction under California Penal Code § 261.5(c) is not an aggravated felony as "sexual abuse of a minor," *Esquivel-Quintana*, 581 U.S. 385, and it is not a crime of violence, *Valencia v. Gonzales*, 439 F.3d 1046 (9th Cir. 2006). Nor is it categorically a crime involving moral turpitude: the Ninth Circuit has held that even the more serious offense defined in § 261.5(d) is not categorically a crime involving moral turpitude, because the statute criminalizes consensual conduct without any requirement of knowledge of the minor's age. *Quintero-Salazar v. Keisler*, 506 F.3d 688 (9th Cir. 2007). The conviction therefore does not render Petitioner inadmissible under 8 U.S.C. § 1182(a)(2) or deportable under § 1227(a)(2)(A), and it falls outside § 1226(c)(1)(A)–(D). And it is not among the offenses enumerated in § 1226(c)(1)(E), which reaches only burglary, theft, larceny, shoplifting, assault of a law enforcement officer, and offenses resulting in death or serious bodily injury.

**E. The Due Process Clause Independently Requires an Individualized Custody Determination**

47. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The Clause applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Its protections carry particular force for a noncitizen who, like Petitioner, has lived in this country for decades and has developed substantial family and community ties here. *Id.* at 693–94.

48. Civil detention is constitutionally permissible only when it bears a "reasonable relation" to a legitimate, non-punitive governmental purpose—in the immigration context,

preventing flight and protecting the community—and only when accompanied by "adequate procedural protections." *Zadvydas*, 533 U.S. at 690–91; *Foucha v. Louisiana*, 504 U.S. 71, 80–81 (1992); *Demore*, 538 U.S. at 527–28. The minimum requirement is an individualized determination, by a neutral decisionmaker, of whether those purposes are actually served by detaining the particular person. *Foucha*, 504 U.S. at 81–83; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

49. Section 2241 contains no statutory exhaustion requirement; exhaustion in immigration habeas cases is prudential and is excused where pursuit of administrative remedies would be futile, where the administrative body lacks authority to grant the relief sought, or where irreparable injury would result from delay. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

50. Each ground applies. Respondents have treated Petitioner as subject to a final order of removal and to mandatory detention, and Immigration Judges are bound by agency precedent, including *Matter of Yajure Hurtado*, on the question of their own custody jurisdiction. Neither the Immigration Court nor the BIA may declare the agency's detention policy unlawful, adjudicate Petitioner's constitutional claims, or order his release on constitutional grounds. And every additional day of administrative process is a day of unlawful confinement for a diabetic father of six United States citizen children whose removal has been stayed and whose proceedings have been reopened. To the extent Petitioner has not already sought a custody redetermination from the Immigration Court, exhaustion should be excused; to the extent he has and been refused, no further administrative remedy exists.

## CLAIMS FOR RELIEF

## COUNT ONE

### Detention in Violation of the Immigration and Nationality Act

### (8 U.S.C. §§ 1226(a), 1231; 28 U.S.C. § 2241)

51. Petitioner realleges and incorporates the preceding paragraphs.

52. The Immigration Judge has reopened Petitioner's removal proceedings. Petitioner is not subject to an administratively final order of removal, and 8 U.S.C. § 1231 does not authorize his detention. He is not an arriving alien, is not "seeking admission" under 8 U.S.C. § 1225(b)(2)(A), and is not described in 8 U.S.C. § 1226(c). His detention pending a decision on removability is governed exclusively by § 1226(a).

53. Section 1226(a) and its implementing regulations entitle Petitioner to an individualized custody determination and to request a custody redetermination before an Immigration Judge. 8 C.F.R. §§ 236.1(d), 1003.19, 1236.1(d).

54. Respondents have detained Petitioner as though he were subject to a final order of removal or to mandatory detention, have denied him the custody-review process that § 1226(a) provides, and have thereby detained him without statutory authority. His detention is "in violation of the . . . laws . . . of the United States." 28 U.S.C. § 2241(c)(3).

## COUNT TWO

### Procedural Due Process — Detention Without an Individualized Custody Hearing

### (Fifth Amendment; 28 U.S.C. § 2241)

55. Petitioner realleges and incorporates the preceding paragraphs.

56. Petitioner has a fundamental liberty interest in freedom from physical confinement. The government's interest in detaining a noncitizen whose removal has been stayed, whose proceedings have been reopened, who has lived in this country for nearly three decades, and whose sole conviction dates to 1998, is minimal. The risk of erroneous deprivation under a regime that provides no hearing at all is total. Under *Mathews v. Eldridge*, 424 U.S. at 335, due process

requires, at a minimum, a prompt hearing before a neutral adjudicator at which the need for Petitioner's detention is actually examined.

57. Due process further requires that, at that hearing, the government bear the burden of justifying continued civil detention by clear and convincing evidence, and that the adjudicator consider alternatives to detention and Petitioner's ability to pay any bond. *Addington v. Texas*, 441 U.S. 418, 425–27 (1979); *Foucha*, 504 U.S. at 81–83; *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011); *Hernandez*, 872 F.3d at 990–94. Petitioner acknowledges that *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), held that due process did not require a clear-and-convincing burden at a *second* bond hearing for a petitioner who had already received one hearing at which he bore the burden. *Rodriguez Diaz* expressly preserved as-applied challenges and directed an individualized inquiry. *Id.* at 1207–08; see *id.*, 84 F.4th 894 (9th Cir. 2023) (Paez, J., statement respecting denial of rehearing en banc). Here, Petitioner has had no hearing of any kind, his removal has been stayed, and his proceedings have been reopened; as applied to him, the *Mathews* factors require that the government bear the burden.

58. Respondents' detention of Petitioner without any individualized custody hearing, and without the procedural safeguards the Constitution requires at such a hearing, violates the Due Process Clause of the Fifth Amendment.

**COUNT THREE**

**Substantive Due Process — Detention Not Reasonably Related to Any Legitimate Purpose**

**(Fifth Amendment; 28 U.S.C. § 2241)**

59. Petitioner realleges and incorporates the preceding paragraphs.

60. Civil immigration detention is permissible only insofar as it serves the government's legitimate interests in securing the noncitizen's appearance and protecting the public. *Zadvydas*, 533 U.S. at 690–91; *Demore*, 538 U.S. at 527–28. Detention that is not reasonably related to those purposes, or that is excessive in relation to them, is punitive and violates

substantive due process. *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979); *Jones v. Blanas*, 393 F.3d 918, 932–34 (9th Cir. 2004).

61. Petitioner presents no danger to the community. His sole conviction, for a 1998 strict-liability offense defined by the age difference between the parties, is more than a quarter-century old, and the FBI record reflects no arrest of any kind since 2002. He presents no meaningful risk of flight: he sought out immigration counsel on his own initiative, obtained his own FBI record, scheduled his biometrics knowing he would be in contact with immigration authorities, obtained a stay of removal and the reopening of his proceedings, and is pursuing applications for relief, including cancellation of removal, before the Immigration Court. He has lived here for nearly three decades and has six United States citizen children who depend on him. Any residual risk can be fully addressed by conditions of release. His continued detention bears no reasonable relation to any legitimate governmental purpose and is therefore unlawful.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Pursuant to 28 U.S.C. § 2243, issue an Order to Show Cause directing Respondents to file a return within three days of service identifying the statutory authority under which Petitioner is detained, and set this matter for hearing at the earliest practicable date;

c. Declare that Petitioner is not subject to an administratively final order of removal, that 8 U.S.C. § 1231 does not authorize his detention, and that he is detained, if at all, under 8 U.S.C. § 1226(a) and not under 8 U.S.C. § 1225(b)(2)(A) or any other mandatory detention provision;

d. Declare that Respondents' detention of Petitioner without an individualized custody hearing violates the Immigration and Nationality Act and the Fifth Amendment;

e. Issue a writ of habeas corpus ordering Respondents to release Petitioner forthwith under reasonable conditions of supervision;

f. In the alternative, order Respondents to provide Petitioner, within seven (7) days, an individualized custody hearing before an Immigration Judge at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk that no condition of release can mitigate, and at which the Immigration Judge considers alternatives to detention and Petitioner's ability to pay any bond; and order that if no such hearing is provided within seven days, Petitioner be released;

g. Enjoin Respondents from transferring Petitioner outside the Central District of California during the pendency of this action;

h. Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

i. Grant such further relief as the Court deems just and proper.

Dated: September 24, 2026

Respectfully submitted,

/s/ Guofeng Li
GUOFENG LI, ESQ. (CA SBN 343936)
VIP LAW GROUP PC
Attorney for Petitioner ROBERTO QUIROZ MORALES

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am the attorney for Petitioner ROBERTO QUIROZ MORALES and submit this verification on his behalf pursuant to 28 U.S.C. § 2242 because he is detained at the Adelanto ICE Processing Center and cannot readily sign this petition. I have discussed the facts stated in this Petition with Petitioner's immigration counsel of record and have reviewed Petitioner's immigration and criminal records, including the documents attached as exhibits. I verify under penalty of perjury under the laws of the United States that the factual statements in this Petition are true and correct to the best of my knowledge, information, and belief.

Executed on September 24, 2026, at Farmingdale, New York.

/s/ Guofeng Li
GUOFENG LI, ESQ.

**CERTIFICATION OF COMPLIANCE WITH FED. R. CIV. P. 5.2**

Counsel certifies that this Petition and the accompanying exhibits have been redacted in accordance with Fed. R. Civ. P. 5.2(a) and Local Rule 5.2-1. No minor child is identified by name; no dates of birth are included; and Social Security numbers and financial account numbers have been omitted. Unredacted copies are maintained by counsel and will be lodged under seal upon request of the Court.

**INDEX OF EXHIBITS**

Exhibit A Email Correspondence with ICE ERO Confirming Current Detention (Aug. 26 – Sept. 21, 2026)

Exhibit B Order of the Immigration Judge Granting Motion to Reopen (Sept. 15, 2026)