UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ROBERTO QUIROZ MORALES,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al,<br>Respondents. | Case No. 5:26-cv-05716-DTB<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## PROCEEDINGS

On September 28, 2026, petitioner Roberto Quiroz Morales ("Petitioner"), through counsel, filed a "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241; 8 U.S.C. §§ 1225, 1226, 1231; APA 5 U.S.C. § 706; Complaint for Declaratory and Injunctive Relief" ("Petition"). (Docket No. 2). The Petition alleges the following claims for relief: (1) Petitioner's detention violates the Immigration and Nationality Act; (2) Petitioner's detention violates his right to procedural due process in violation of the Fifth Amendment; and (3) Petitioner's

detention violates his right to substantive due process in violation of the Fifth Amendment . (Id. at 15-17).[1]

Pursuant to the General Order 26-05 and Briefing Schedule (Docket No. 5), Respondents were to file an Answer to the Petition on or before October 5, 2026. However, Respondents failed to appear in this matter and, despite the requirement of General Order 26-05 and Briefing Schedule set forth therein, failed to file an Answer to the Petition or otherwise respond.

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## RELEVANT BACKGROUND[2]

Petitioner first entered the United States in or about August 1990. (Petition at ¶ 16). Shortly after his entry, immigration officers required him to complete paperwork. (Id.). Petitioner did not understand that he was being placed into formal immigration proceedings or the legal consequences of the documents he was asked to sign. (Id.).

On December 17, 1997, an Immigration Judge ordered Petitioner removed in absentia. (Id. at ¶ 17). Petitioner never received notice of the hearing. (Id.). As the Immigration Judge has since noted, the Notice to Appear sent to Petitioner by certified mail was returned to the court as unclaimed and remained in the record of proceedings. (Id.). Petitioner did not knowingly fail to appear; he did not know that he was required to appear before an Immigration Judge. (Id.).

In July 1998, Petitioner was arrested in San Bernardino County and was subsequently convicted in the Chino Justice Court of unlawful sexual intercourse

---

[1] Citation to the pleadings shall refer to the Court's CM/ECF pagination at the top of each page.

[2] The Background is taken primarily from the Petition.

with a minor more than three years younger than the defendant, in violation of California Penal Code § 261.5(c). (Id. at ¶ 18). He was sentenced to 36 months of probation and 180 days in jail. (Id.). Section 261.5(c) is a strict-liability offense defined by the age difference between the parties; it requires neither force nor lack of consent, and the Supreme Court has held that it is not "sexual abuse of a minor" under the INA. Esquivel-Quintana v. Sessions, 581 U.S. 385 (2017). (Id.).

After Petitioner served his jail term, immigration officers took him into custody in early November 1998. (Id. at ¶ 19). Petitioner was told that he could either remain in custody or return to Mexico; he chose to return and was placed on a bus to Mexico on or about November 13, 1998, which government records reflect as a removal. (Id.). Petitioner understood his return to be a consequence of his undocumented status; he did not understand that an order of removal had been entered against him in proceedings of which he had never received notice. (Id.).

In June 2002, Petitioner was arrested in San Bernardino County for a violation of the probation imposed in the 1998 case. (Id. at ¶ 20). The FBI record of that arrest reflects no new conviction, and it reflects no arrest or conviction of any kind in the more than twenty-four years since. (Id.).

Petitioner returned to the United States later in 1998 and has lived here continuously ever since—approximately twenty-eight years. (Id. at ¶ 21).

Petitioner is the father of six United States citizen children and has extensive family, employment, property, and community ties in this country. (Id. at ¶ 22). His family depends on his presence and support, and his detention has been especially hard on his young daughter, who is facing significant emotional challenges. (Id.).

In 2025, Petitioner and his wife sought professional assistance to address their immigration status. (Id. at ¶ 23). Petitioner retained an attorney and paid legal fees for that assistance. (Id.). As part of that process, Petitioner requested and obtained his own FBI Identity History Summary in August 2025. (Id.). His wife completed

biometrics, and Petitioner followed the instructions he was given and was scheduled for his own USCIS biometrics appointment. (Id.).

On July 13, 2026, the day of his scheduled USCIS biometrics appointment, Petitioner was arrested by ICE. (Id. at ¶ 24). He was not arrested at or near a border or port of entry in connection with any attempt to enter the United States. (Id.). He was arrested in the interior of the United States, nearly three decades after his last entry, while he was actively and voluntarily pursuing lawful immigration status. (Id.).

After his arrest, Petitioner was informed that ICE was relying on the 1997 in-absentia order. (Id. at ¶ 25). ICE transferred him to the Adelanto ICE Processing Center, where he has remained continuously detained. (Id.).

Petitioner promptly retained new immigration counsel, Alexandre Law Firm & Associates, which filed with the Immigration Court a Motion to Reopen the 1997 in absentia proceedings based on lack of notice and, in the alternative, requesting that the court exercise its sua sponte authority, together with a request for a stay of removal. (Id. at ¶ 26). The motion was supported by Petitioner's declaration, a declaration from his son, applications for relief, and supporting documentation totaling nearly 400 pages. (Id.). The applications include an application for asylum, withholding of removal, and protection under the Convention Against Torture, and an application for cancellation of removal for certain nonpermanent residents under 8 U.S.C. § 1229b(b). (Id.).

On August 26, 2026, counsel informed ICE that the Immigration Judge had that day denied Petitioner's credible fear/asylum review and returned the matter to DHS, and asked ICE to defer removal while the Motion to Reopen and stay request remained pending. (Id. at ¶ 27). That evening, an ICE Supervisory Detention and Deportation Officer responded that ICE was obligated to carry out the "removal of

criminally convicted detainees with final orders" and would conduct "pre-removal checks." (Id.).

On or about September 3, 2026, the Immigration Judge granted Petitioner's request for a stay of removal. (Id. at ¶ 28). That same evening, Petitioner's family advised counsel that Petitioner was about to be moved or removed, and counsel immediately transmitted the stay order to ICE and asked ICE to confirm whether Petitioner had been moved. (Id.).

On September 4, 2026, ICE Enforcement and Removal Operations at Adelanto confirmed in writing that it had received the Immigration Judge's order granting the stay of removal, that Petitioner "is not being transferred or removed" from the facility, and that the matter was being handled according to the Immigration Judge's orders. (Id. at ¶ 29).

On September 15, 2026, Immigration Judge Yvan Murad of the West Los Angeles Immigration Court granted Petitioner's Motion to Reopen. (Id. at ¶ 30). The Immigration Judge found that DHS had filed no timely response and that the motion was therefore deemed unopposed, 8 C.F.R. § 1003.23(a); accepted as true the facts stated in Petitioner's affidavits; noted that the Notice to Appear had been returned to the court unclaimed; and, "[b]ased on the record before the court and lack of any opposition," exercised the court's sua sponte authority to grant the motion. (Id.). The order was served on DHS and on Petitioner's counsel on September 16, 2026. (Id.).

As of the date of this Petition, DHS has not appealed the Immigration Judge's September 15, 2026 order to the Board of Immigration Appeals or moved for its reconsideration. (Id. at ¶ 31).

Petitioner's removal proceedings are now pending before the Immigration Court. (Id. at ¶ 32). Nevertheless, Petitioner remains detained at the Adelanto ICE Processing Center. (Id.). ICE officers at Adelanto have continued to correspond

with counsel about Petitioner as a current detainee through at least September 18, 2026. (Id.).

On information and belief, since the Immigration Judge reopened his proceedings, ICE has not served Petitioner with a Form I-286 Notice of Custody Determination offering release on bond or recognizance, has not conducted any custody review, and has not identified the statutory authority under which it now detains him. (Id. at ¶ 33).

At no time since his arrest has any neutral adjudicator considered whether Petitioner presents a danger to the community or a risk of flight, whether any such risk could be mitigated by conditions of release, or whether his continued detention serves any legitimate governmental purpose. (Id. at ¶ 34).

Petitioner's detention has caused serious harm to him and his family. Petitioner is diabetic and requires medically necessary diabetic footwear. Counsel was informed that after Petitioner was taken out of the detention facility and returned, he was issued new clothing but his diabetic shoes were not returned to him, and counsel was required to intervene with ICE on his behalf. (Id. at ¶ 35). His detention also separates him from his six children, including a daughter who is facing significant emotional challenges. (Id.).

If released, Petitioner will return to his family home in Fontana, California, in San Bernardino County, where he will be available to appear for every hearing before the Immigration Court and every ICE check-in. (Id. at ¶ 36). He is prepared to comply with any condition of release the Court or ICE imposes, including electronic monitoring. (Id.).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const.,

Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention"). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

/ / /

/ / /

/ / /

/ / /

## IV.

## DISCUSSION

### A. Habeas Relief is Warranted.

As noted, Respondents have elected not to appear in this action, despite the Court's order to do so.

Federal courts must decide cases based on the arguments the parties present. See United States v. Sineneng-Smith, 590 U.S. 371, 375–76 (2020); Greenlaw v. United States, 554 U.S. 237, 243 (2008). That rule follows from the party presentation principle: "In our adversarial system of adjudication . . . in both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Sineneng-Smith, 590 U.S. at 375 (2020) (cleaned up). The Supreme Court has reminded the lower courts that they are "essentially passive instruments of government" who must adhere to the narrow questions raised by the parties. Margolin v. Nat'l Assoc. of Immigration Judges, 146 S. Ct. 1285, 1288 (2026) (citation omitted).

Here, Petitioner raises, *inter alia*, a claim that his detention without any pre-deprivation process violated his procedural due process rights and that the proper remedy is his release from custody. (Docket No. 1 at 15-16). This claim has been found to be a basis for habeas relief by numerous courts in this Circuit, including this one. See, e.g., Eddier David Taborda Loero v. James Janecka, et al, No. 5:26-cv-03713-DTB (Order Granting Petition for Writ of Habeas Corpus) (C.D. Cal. July 15, 2026).

Respondents elected not respond to the Petition and to Petitioner's claims, including his procedural due process claim. Respondents are represented by competent counsel with full access to all the relevant facts concerning Petitioner's detention, and they offered no factual or legal basis to reject his claim. Their failure

to do so constitutes a forfeiture of the arguments they could have made in support of their position. See Martinez v. Sessions, 873 F.3d 655, 660 (9th Cir. 2017) ("The government does not offer any argument on the merits of this petition; therefore, it has waived any challenge to the arguments [the opposing party] raised."); Am. Int'l Enters., Inc. v. F.D.I.C., 3 F.3d 1263, 1266 n.5 (9th Cir. 1993) ("Issues raised in the brief that are not supported by argument are deemed abandoned."). And where the opposing party offers no reason to reject a particular claim, the Court is not duty-bound to search for a reason on their behalf - indeed, the party presentation principle requires the court to refrain from doing so. Sineneng-Smith, 590 U.S. at 375-76 ("[A]s a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.") (cleaned up).

As such, the Court need not decide whether it agrees with the merits of Petitioner's claims in all respects; it simply acknowledges that his claim of detention without lawful authority is unrefuted by Respondents. As numerous other courts have found in such circumstances, the Petition should therefore be granted based on Respondent's failure to oppose the primary relief sought. See, e.g., Barajas-Bautista v. Warden, Desert View Annex, No. 5:26-cv-03135-SK, 2026 WL 2058433, at *2 (C.D. Cal. July 13, 2026) (granting petition and ordering release where the respondent did not oppose granting a bond hearing but did not address the petitioner's remaining claims; noting "Respondents, who alone possess petitioner's A-file, his Form I-213, and his criminal history record, filed nothing and denied nothing"); Soleimani v. Larose, No.: 25-cv-3082-DMS-DEB, 2025 WL 3268412, *3 (S.D. Cal. 2025) (granting habeas petition where government's answer to the petition did not respond to all claims in the petition, including a Fifth Amendment due process claim); Singh v. Chiang, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, *4 (C.D. Cal. 2025) (construing government's failure to oppose argument

raised by habeas petitioner as a concession); N-E-M-B v. Wamsley, No. 3:25-cv-989-SI, 2025 WL 3527111, at *1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition.").

Accordingly, because Respondents have not met their burden "to show cause why the writ should not be granted," 28 U.S.C. § 2243, the Court grants the Petition and orders Petitioner to be released.

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that Judgment be entered: (a) Granting the Petition; (b) ordering Respondents to immediately release Petitioner Roberto Quiroz Morales (A# 075-487-380) from custody subject to the same conditions (if any) that he was subject to at the time he was arrested and detained; (c) ordering Respondents to return all property and documents confiscated from Petitioner (if any) during his arrest and processing into detention; (d) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without complying with all applicable statutes and regulations, including written notice and a pre-deprivation hearing before a neutral arbiter; and (e) ordering Respondents to file a status report within two (2) business days of the date of this Order to confirm that Petitioner's release from custody is subject to the same conditions (if any) that he was subject to at the time he was arrested and detained.

DATED: October 9, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE